The ARCHBISHOP BERGAN MERCY HOSPITAL, Plaintiff,

v.

Margaret HECKLER, Secretary of Health and Human Services, et al., Defendants.

No. CV 84–0–791.

United States District Court, D. Nebraska.

Feb. 1, 1985.

On Motion for New Trial and Stay March 18, 1985.

Lyman L. Larsen, Patricia A. Zieg, William T. Oakes, Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., for plaintiff.

Douglas Semisch, Asst. U.S. Atty., Omaha, Neb., and Paul P. Cacioppo, Regional Atty., Region VII, Dept. of Health & Human Services, Frances Reddis, Asst., Washington, D.C., for defendants.

## MEMORANDUM OPINION

BEAM, District Judge.

This matter is before the Court on plaintiff's request for preliminary injunction (filing 1), defendants' motion to dismiss (filing 12) and plaintiff's motion for summary judgment (filing 19).

Plaintiff, the Archbishop Bergan Mercy Hospital, is a provider of hospital services under Part "A" of the Medicare Act. 42 U.S.C. §§ 1395 et seq. Defendant, Margaret Heckler, is Secretary of Health and Human Services and is the federal officer charged with the administration of the Medicare program. Pursuant to 42 U.S.C. § 1395g, the Secretary is responsible for determining the amount which should be paid to each provider for services furnished under the Medicare program. The Secretary, however, more commonly contracts with private organizations, referred to as fiscal intermediaries, to assist in the administration of the Medicare program. 42 U.S.C. § 1395h. The intermediaries perform a variety of functions under the Medicare program, such as determining the amounts which are payable to providers and making the actual payments. Defendant, Mutual of Omaha, was plaintiff's fiscal intermediary for the year in question.

The Medicare statute requires that the Secretary reimburse Part A providers based on the provider's "reasonable cost" of rendering covered services to eligible beneficiaries or, if lower, the customary charges for such services. 42 U.S.C. § 1395f(b). The Act defines reasonable cost as the "cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." The statute further provides that the reasonable costs of services shall be determined pursuant to regulations promulgated by the Secretary "establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies and services." 42 U.S.C. § 1395x(v)(1)(A). The Secretary has enacted an extensive set of regulations implementing and defining the reasonable cost reimbursement process. 42 C.F.R. §§ 405.-401 et seq.

In 1982, with the enactment of the Tax Equity and Fiscal Responsibility Act (TEFRA), Congress placed limitations upon the reimbursement of a provider's costs in anticipation of the development of a new prospective payment system, which would reimburse providers on a per discharge basis, depending upon the type of service provided for individual patients, rather than reimburse for all reasonable costs incurred in providing those services.

One such limitation, established by TEFRA, is designated the "target amount" whereby a hospital's operating costs, per discharge, are limited to the allowable operating costs of in-patient hospital services for the preceding twelve-month cost reporting period, which in Bergan Mercy's case was the cost year ending June 30, 1983. 42 U.S.C. § 1395ww(b). This year, therefore, is sometimes referred to as the TEFRA base year.

The "target amount" limit on operating expenses also contains certain incentive and penalty provisions. As an incentive for hospitals to keep costs down, the Medicare Act provides that if a hospital's operating costs are less than its target amount, the payment the hospital receives is equal to its costs plus "(i) 50% of the amount by which the target amount exceeds the amount of the operating costs, or (ii) 5% of the target amount, whichever is less; ..." 42 U.S.C. § 1395ww(b)(1). On the other hand, if the hospital's costs are greater than its target amount, the hospital's payment is equal to the target amount plus twenty-five percent of the amount by which the amount of the operating costs exceed the target amount. 42 U.S.C. § 1395ww(b)(1). Thus, if a hospital keeps its costs below the target amount

it receives payment in excess of its cost. If, however, costs exceed the target amount, the hospital is paid less than its costs.

Congress has mandated that providers shall receive periodic payments (at least monthly) of amounts due them for services furnished under the Medicare Act. 42 U.S.C. § 1395g. At the end of a fiscal year, a provider submits a cost report to the intermediary for purposes of reaching a "tentative settlement." This cost report is accepted as the basis for the tentative settlement unless the intermediary has reason to doubt its accuracy. The intermediary compares the hospital's allowable costs with the amount paid to the hospital through periodic payments and determines if there has been any overpayment or underpayment to the provider. This is known as the "initial retroactive adjustment." 42 C.F.R. § 405.454(f)(2). Any amount owed by either party must be paid within thirty days; thereafter, interest accrues on the amount due. 42 U.S.C. § 1395g(d); 42 C.F.R. § 405.454(f)(2). Subsequently, the intermediary more closely analyzes the cost report and informs the provider of the "final determination" of the amount of Medicare reimbursement through a Notice of Amount of Program Reimbursement (NPR). 42 C.F.R. § 405.1803. By regulation, this final settlement need not be issued for twelve months.

The issue in this case is whether the incentive payments discussed above must be paid to the provider at the time of tentative settlement, or whether it is not due until final settlement. As required by law, plaintiff filed a cost report for the cost year ending June 30, 1984. Because it had kept its costs below its target amount, plaintiff believed it was entitled to an incentive payment of $767,726.00. On November 13, 1984, defendant Mutual of Omaha advised plaintiff that the tentative settlement review revealed an overpayment of $1,052,644.00, and requested refund of the overpayment within thirty days. In a letter dated November 20, 1984, plaintiff requested that Mutual of Omaha recognize that it need not refund the amount of the incentive payment plaintiff claimed was due. Mutual of Omaha responded on November 30, 1984. Although the intermediary did not dispute plaintiff's calculation of the incentive payment, Mutual of Omaha contended that the incentive payment could not be made until the NPR was issued. The intermediary was complying with an August 9, 1984, policy memorandum issued by the Health Care Finance Administration Office on behalf of defendant Secretary of Health and Human Service. The Secretary's position was that the incentive payments are not costs and, therefore, need not be reimbursed throughout the cost reporting period.

Plaintiff filed suit, seeking a court determination of its entitlement to the incentive payment at the time of tentative settlement. Plaintiff has asked for a preliminary injunction restraining the intermediary from collecting as part of the overpayment the disputed $767,726.00. The dispute is not about the amount of the incentive payment, but rather its timing. At stake is the right to hold, and draw interest on, the disputed sum between the tentative settlement and the issuance of the NPR, some twelve to eighteen months.

Plaintiff has alleged that jurisdiction is available under 28 U.S.C. § 1331, 28 U.S.C. § 1361, 28 U.S.C. § 1651, and 5 U.S.C. § 702. Defendants have filed a motion to dismiss, claiming that this Court is without jurisdiction. In addition, defendants claim that even if the Court assumes jurisdiction plaintiff's claim does not satisfy the requirements for a preliminary injunction, as discussed in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981). Finally, plaintiff has filed a motion for summary judgment.

I.

Defendants contend that under *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), this Court does not have federal question jurisdiction over plaintiff's claims. In *Ringer* the Supreme Court held that 42 U.S.C. § 405(h), made

applicable to the Medicare Act by 42 U.S.C. § 1395ii, bars jurisdiction pursuant to § 1331 as to all claims arising under the Medicare Act.[1] Plaintiff argues that *Ringer* is distinguishable because in this case, unlike in *Ringer*, plaintiff has no adequate remedy under the Medicare scheme and no other way to obtain judicial review.

Plaintiff asserts that federal question jurisdiction exists over two categories of claims, statutory and constitutional. First, plaintiff argues that defendants have failed to comply with the Medicare Act and the appropriate regulations in refusing to pay the incentives at the tentative settlement stage. Second, plaintiff alleges that defendants' actions violate the Constitution. For purposes of section 1331 jurisdiction, these claims must be viewed separately.

■ Plaintiff's statutory claims are clearly barred by *Ringer*. In *Ringer* the Court held that jurisdiction over claims arising under the Medicare Act is precluded by section 405(h). In this case plaintiff's statutory claims clearly arise under the Medicare Act. Plaintiff's argument that this case is distinguishable because no other avenue of relief exists is without merit. Although in *Ringer* some plaintiffs did have administrative remedies to exhaust, the named plaintiff did not. As the dissent pointed out, because he had not yet had the requested operation, Ringer had no way to challenge the Secretary's refusal to pay for it. *Ringer*, 104 S.Ct. at 2030. He was thus left with no avenue of administrative or judicial review. The Supreme Court held, nonetheless, that section 405(h) barred federal question jurisdiction. Plaintiff's statutory claims, then, are clearly barred by section 405(h).

■ Plaintiff's constitutional challenges present a more difficult issue. Plaintiff contends that other than by way of section 1331 there is no means available to test the

constitutionality of actions taken by defendants. The Supreme Court has stated that a statute totally precluding judicial review of constitutional issues "raise(s) a serious constitutional question of the validity of the statute as so construed." *Weinberger v. Salfi*, 422 U.S. 749, 762, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522 (1975). It is a "cardinal principle" that a court should determine if it is "fairly possible" to construe such a statute as to avoid such constitutional doubts. *Johnson v. Robinson*, 415 U.S. 361, 366–67, 94 S.Ct. 1160, 1165, 39 L.Ed.2d 389 (1974).

Prior to *Ringer* the Eighth Circuit held, in *St. Louis University v. Blue Cross Hospital Service*, 537 F.2d 283 (8th Cir.1976), that section 405(h) cannot serve to completely bar judicial consideration of constitutional claims. The court distinguished *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), wherein the Supreme Court found that certain constitutional challenges were barred by section 405(h). In *Salfi*, the plaintiff could still attain review through section 405(g). The Eighth Circuit did not view *Salfi* as interpreting section 405(h) as a complete bar to federal question jurisdiction when no other review is available. As discussed above, such preclusion presents serious constitutional problems. Thus, the court held that where there is no other adequate form of review, section 405(h) does not foreclose section 1331 jurisdiction over constitutional claims.

This is still the law after *Ringer*. Although *Ringer* contains broad language as to the preclusive effect of section 405(h), the claims in that case were statutory, not constitutional. *Ringer*, then, does not speak to the issue in *St. Louis University v. Blue Cross Hospital Service*. Therefore, if, as plaintiff contends, there is no other form of review available, this Court

---

1. 42 U.S.C. § 405(h) reads as follows:
   The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under 28 U.S.C. § 1331 and § 1346 to recover on any claim arising under this subchapter.

has jurisdiction over plaintiff's constitutional challenges.

Because the Court finds jurisdiction proper under 28 U.S.C. § 1361, this question of the availability of review need not be decided here. Furthermore, the availability of review is a critical component of the Court's inquiry into the propriety of mandamus, and as such, the issue will be discussed below.

## II.

The Supreme Court has not yet decided whether section 405(h) also precludes mandamus jurisdiction. *Ringer*, 104 S.Ct. at 2022. The Eighth Circuit, however, has found such jurisdiction to be proper. *Belles v. Schweiker*, 720 F.2d 509 (8th Cir. 1983).

■ Defendants argue that mandamus jurisdiction is not available in this case because plaintiff does not have a clear right to the relief sought and because plaintiff has an adequate remedy under the Medicare Act to challenge defendants' actions. These arguments, however, go to the availability of a writ of mandamus itself, and not to jurisdiction. The Eighth Circuit has stated, "In resolving whether mandamus jurisdiction is available, the 'allegations of the complaint, unless patently frivolous, are taken as true to avoid tackling the merits under the ruse of assessing jurisdiction.'" *Belles*, 720 F.2d at 513 (*quoting Carpet, Linoleum & Resilient Tile v. Brown*, 656 F.2d 564, 567 (10th Cir.1981). Plaintiff's allegations are not frivolous; taking them at face value, jurisdiction under 28 U.S.C. § 1361 exists.

## III.

■ Generally, mandamus requires the establishment of three elements: (1) plaintiff has a clear right to the relief sought; (2) a clear duty exists on the part of the defendant to do the act in question, and (3) no other adequate remedy is available. *Jeno's, Inc. v. Commissioner of Patents & Trademarks of U.S.*, 498 F.Supp. 472 (D.Minn.1980).

In this case the first and second elements are closely related. Plaintiff contends that it has the right, and the defendants must recognize that right, to receive the incentive payment at the time of tentative settlement. Plaintiff points first to 42 U.S.C. § 1395g, dealing with periodic payments to providers, which states, in part:

> The Secretary shall *periodically determine the amount which shall be paid under this part to each provider of services with respect to the services furnished by it and the provider of services shall be paid*, at such time or times as the Secretary believes appropriate (but *not less often than monthly* ) *and prior to audit or settlement* by the General Accounting Office from the Federal Hospital Insurance Trust Fund, the amounts so determined, with necessary adjustments on account of previously made overpayments or underpayments...."

(Emphasis added.)

According to plaintiff, the incentive payment is an amount payable "with respect to services furnished" by the hospital, and, therefore, must be paid periodically and included in the tentative settlement. It is of no consequence that the incentive payment is not strictly a "cost."

Additionally, plaintiff points out that the Medicare Act requires that interest be paid on amounts due beginning thirty days after a "final determination" is made. 42 U.S.C. § 1395g(d). "Final determination," as defined in the regulations, includes a tentative settlement. 42 C.F.R. § 405.376. Plaintiff argues that because the Secretary has not disputed the amount of the incentive payment, plaintiff is entitled to interest if it is not allowed to retain the payments.

Defendants, on the other hand, argue that the incentive payments are a bonus, not a reimbursement of costs, and that periodic payments need not be made. The purpose of periodic payment and tentative settlement, say defendants, is to promptly reimburse providers' costs. This rationale does not apply to a bonus payment. Defendants find support for this position in the regulations. 42 C.F.R. § 405.-

463(d)(1)(iii) provides that the incentive payment is determined by comparing the provider's target rate with its "actual allowable costs." These "actual allowable costs" are not known until final settlement. 42 C.F.R. § 405.454(f)(1). Therefore, defendants argue, the incentive payment is not due until final settlement.

Defendants also point out that the statutory provisions for administrative and judicial review treat incentive payments differently from reimbursement of costs. 42 U.S.C. § 1395oo. Defendants contend that this further illustrates Congress' intention that incentive payments are not due until final settlement.

■ The parties' positions are both reasonable. The relevant statutes and regulations do not explicitly state when the incentive payments are due and there would be sound reasons for adopting either side's view. Normally, in such a situation the matter would be left to the Secretary's discretion. However, because of defendants' own actions it is necessary to conclude that plaintiff does, in fact, have a right to receive the incentive payment at the time of tentative settlement.

As discussed previously, 42 U.S.C. § 1395ww(b)(1) contains both "bonus" and "penalty" provisions. If a provider keeps costs below its target amount, it receives an incentive or bonus of fifty percent of the amount by which it has kept costs below the target. If a provider's costs exceed the target amount, its penalty is receiving only twenty-five percent of those costs above the target amount. Prior to the August 9, 1984, policy memorandum, issued on behalf of the Secretary, defendant Mutual of Omaha had been recognizing both the incentive and penalty provisions prior to final settlement. The Secretary's memorandum sought to end the early payment of incentives but continued the enforcement of the penalty.

The defendants contend that there is no "penalty." The Medicare Act provides for reimbursement of "reasonable costs." According to defendants, when a provider's costs are above the target amount, the excess costs are, by definition, not reasonable. The statute does provide for reimbursement of twenty-five percent of those excess costs. Defendants argue that the twenty-five percent reimbursement is not a penalty, but rather is a partial payment of the hospital's excess costs. As a payment of costs, they contend, it must be recognized in the tentative settlement, unlike the incentive, which is not a payment of costs.

The Court disagrees. The same statutory section establishes both the incentive and the twenty-five percent reimbursement of costs above the target amount. More importantly, both are determined by a comparison of the same numbers: the provider's costs and its target amount. If, as defendants contend, it cannot be known until final settlement whether a provider's costs are less than the target amount, thus entitling it to an incentive payment, it can also only be known at final settlement if costs exceed the target amount, thus entitling the provider to reimbursement of only twenty-five percent of some of its costs. Under defendants' theory, providers should be entitled to reimbursement of all costs at the preliminary settlement, subject to a reduction if the final audit showed costs in excess of the target amount.

Because defendants enforce the penalty at the preliminary settlement, they must be consistent and recognize the incentive at that time as well. Failure to do so is contrary to the Act and violates plaintiff's Fifth Amendment right to equal protection. Therefore, the Court concludes that plaintiff has established the first two requirements for mandamus.

The parties have argued vigorously and at length over the third requirement for mandamus: whether plaintiff has any other adequate remedy. Defendants contend that the Provider Reimbursement Review Board (PRRB) has jurisdiction over plaintiff's claim and can afford full relief if plaintiff prevails on the merits. Plaintiff disputes both the existence of PRRB jurisdiction and its authority to grant plaintiff the relief it requests.

If a provider is not satisfied with an intermediary's decision, it may request a hearing before the PRRB. *See* 42 U.S.C. § 1395*oo*. A provider is entitled to such a hearing if it "is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of Section 1395ww of this Title," which governs incentive payments. 42 U.S.C. § 1395*oo* (a)(1)(A)(ii). This avenue of appeal is available only after a final determination of the amount of reimbursement, which in this case would be upon the issuance of the NPR.

The PRRB can affirm, modify or reverse the intermediary's final determination, and its decision is final unless the Secretary reverses, affirms or modifies it within sixty days. 42 U.S.C. §§ 1395*oo* (d) and (f)(1). Providers can seek review in federal district court of any final decision of the PRRB or the Secretary. *Id.* Review in federal district court is also available if the PRRB decides it does not have jurisdiction to consider the provider's claims. *Id.;* 42 C.F.R. § 405.1842.

Defendants contend that the PRRB is the proper mechanism for plaintiff to challenge the timing of the incentive payment. Plaintiff disputes this, arguing first that the PRRB has jurisdiction only over the *amount* of the incentive payment, not its timing. Furthermore, plaintiff states that even if the PRRB has jurisdiction, its claim would effectively be moot by the time the PRRB heard the case. If plaintiff returns the amount of the incentive payment now, it loses the ability to get interest on that money until the NPR is issued. The only way the PRRB could remedy this would be to order defendants to pay interest from the time of tentative settlement. Plaintiff contends that interest is only available beginning after the PRRB's decision. 42 U.S.C. § 1395*oo* (f)(2); CCH Medicare Guide ¶ 7350D, p. 2469–2.

Defendants respond that the PRRB does indeed have jurisdiction over a challenge to the timing of the incentive payment. Should, however, the PRRB conclude it does not have jurisdiction, the issue would be appealable to federal district court, which could then reach the merits. 42 U.S.C. § 1395*oo* (f)(1); 42 C.F.R. § 405.-1842. Defendants also argue that the PRRB or the federal district court could award interest from the tentative settlement if plaintiff prevails. According to defendants, the provision plaintiff cites is applicable when an underpayment is not indicated by the cost report, but is determined to be due only after appeal. In this case, where the intermediary did not dispute the amount of the incentive payment claimed in the cost report, defendants argue that 42 U.S.C. § 1395g(d) and 42 C.F.R. § 405.376(c)(1)(ii) would allow payment of interest beginning thirty days after tentative settlement. The defendants' failure to pay the incentive at tentative settlement would be treated as an undisputed underpayment. They state that either the PRRB or the federal district court could award such interest if plaintiff prevails.

■ Although the answer to the question raised by plaintiff is not crystal clear, and although defendants seem to have indicated a contrary view to plaintiff at another time, the Court finds defendants' position on the availability of PRRB review and the payment of interest to be reasonable. Accordingly, under defendants rationale, plaintiff does have an alternative avenue of review available and a means through which it can be paid interest from the date of tentative settlement. Therefore, this Court has no jurisdiction at this time over plaintiff's constitutional claims. Likewise, it is inappropriate to issue a writ of mandamus at this time.

Since, after issuance of the NPR plaintiff may appeal to the PRRB, with review in this Court, a caveat is directed to the defendants. Should this matter return to this Court for review, the defendants will be bound by their interpretation of the statutes and regulations which interpretation permits the PRRB to award plaintiff interest from the time of tentative settlement upon a determination that such is the proper time for payment of the incentive.

An order in conformance with this Memorandum Opinion will be filed this date.

## ON MOTION FOR NEW TRIAL AND FOR STAY

This matter is before the Court upon plaintiff's motion for new trial (filing 22) and plaintiff's motion for a stay or in the alternative to vacate order of dismissal and to retain jurisdiction (filing 23).

The Court has been advised by plaintiff that its motion for a stay is moot. Accordingly, that motion shall be denied as moot. Additionally, the Court has carefully considered plaintiff's motion for a new trial and concludes that the motion is without merit.

Plaintiff has also requested the Court to vacate the order of dismissal and retain jurisdiction pending plaintiff's effort to exhaust its administrative remedy. This is the proper course to follow. The Court originally determined that it had jurisdiction over plaintiff's claims, but dismissed the case based on defendants' representations that the PRRB has jurisdiction to afford plaintiff a complete remedy. The Court noted that in any future action on this issue, defendants would be bound by their assertions. The interests of justice and judicial economy dictate that the Court should retain jurisdiction pending plaintiff's exhaustion of administrative remedies. *See Rosado v. Wyman*, 397 U.S. 397, 421, 90 S.Ct. 1207, 1222, 25 L.Ed.2d 442 (1970); *Granville House v. Dept. of Health and Human Services*, 715 F.2d 1292 (8th Cir.1983). After PRRB review the Court can either dismiss the suit or enter the appropriate relief without the necessity of a substantially similar action being filed.

Accordingly,

IT IS ORDERED as follows:

1. Plaintiff's motion for a stay (filing 22) is denied as moot.

2. Plaintiff's motion for a new trial (filing 23) is denied.

3. Plaintiff's motion to vacate the order of dismissal and to retain jurisdiction (filing 23) is granted. The Court shall retain jurisdiction pending plaintiff's effort to exhaust the appropriate administrative remedies.