In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1467

FARAH NAZ AHMED,

*Plaintiff-Appellant*,

*v.*

DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 6542—**Ronald A. Guzmán**, *Judge*.

ARGUED NOVEMBER 14, 2002—DECIDED MAY 9, 2003

Before RIPPLE, ROVNER, and DIANE P. WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Farah Ahmed, a native and resident of Pakistan, thought that she had secured the right to live in the United States when she "won" the diversity visa lottery, which is a program that seeks to encourage immigration to the United States from certain underrepresented countries. But, as we explain below, "winning" the lottery meant only winning a chance to secure a visa, and that chance had an expiration date and time. Unfortunately for Ahmed, bureaucratic delays and difficulties beyond her control prevented her from completing her application before that expiration date. She

brought an action under the mandamus statute, 28 U.S.C.
§ 1361, and under the Administrative Procedure Act (APA),
5 U.S.C. §§ 701-06, seeking to compel the federal govern-
ment to process her application for a visa.[1] The district
court dismissed both claims for lack of subject-matter
jurisdiction. Because we can find no meaningful distinc-
tion between Ahmed's case and our recent decision in
*Iddir v. INS,* 301 F.3d 492 (7th Cir. 2002), we agree that
dismissal was the proper outcome, although not be-
cause the court lacked subject-matter jurisdiction to
adjudicate the claims.

# I

The sequence of events that led up to Ahmed's lawsuit
bears an unfortunate resemblance to the experience in
the past of recipients of large envelopes from organiza-
tions like Publishers Clearinghouse announcing in huge
letters that the person is ALREADY A WINNER, but
containing a disclaimer buried in the middle of the packet
that explains that the only thing that has been won is a
chance at the big prize. Ahmed, who at all relevant times
has lived in Pakistan, was told in March 1998 that she
was among those randomly selected for further consider-
ation for the fiscal year 1999 diversity visa program. The
letter she received began with the word "Congratulations!"
Congress established the diversity visa program as a
way of encouraging immigration to the United States from

---

[1] The original lead respondent was the Immigration and Nat-
uralization Service (INS). On March 1, 2003, however, the INS
ceased to exist as an independent agency under the umbrella of
the U.S. Department of Justice, and its functions were transferred
to the new Department of Homeland Security. See Homeland
Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25,
2002). We have changed the caption of this case accordingly.

countries with historically low rates, by making permanent residence visas available to eligible applicants. See 8 U.S.C. § 1153(c). The opportunity to secure a diversity visa lasts for only one fiscal year. *Id*. §§ 1151(a)(3), 1153(c)(1), 1154 (a)(1)(I)(ii). This meant, in Ahmed's case, that she had to complete the application process and obtain her visa before September 30, 1999.

Six months before the deadline, the National Visa Center informed Ahmed that her application would be processed through the United States Embassy in Islamabad, Pakistan, and that she should go to the embassy on May 26 for an interview. The month before the interview, however, Ahmed gave birth to a baby girl. She informed the officials at the embassy that she wanted to include her newborn daughter as a derivative dependent on her application. Two days before the interview, Ahmed sent a letter to the embassy by express mail asking to reschedule the interview, because she had not yet been able to gather together all the documents she needed, including a birth certificate for her daughter.

This request was greeted with silence from the embassy. After waiting for a response for many weeks, Ahmed traveled in August to the embassy, where an official told her to go home and await further word. She obeyed. But, by early September she had still heard nothing. She wrote again to the embassy and also to the U.S. Ambassador on September 13, asking again for a new interview date. Four days later, she returned in person to the embassy. There she saw a sign announcing that the "[diversity visa] program is finished" and that "no further interviews will be held." At that point, unbeknownst to her, she made a fatal mistake by not arranging immediately for a lawsuit to be brought on her behalf in the United States prior to September 30. Instead, she went back home, where she eventually received a "tough luck" form letter from the embassy explaining that the diversity

visa program is a "finite program" that ends every year on September 30, and that her chance for a visa was thus dead.

Almost two years later, Ahmed filed this action in the Northern District of Illinois seeking to compel the government to process her application. The court decided the case on the basis of a joint statement of stipulated facts. As it had done in an earlier case, it decided that there was no subject-matter jurisdiction over her claim and it dismissed on that basis.

## II

### A

Before addressing the merits of Ahmed's claim, we must address the question whether the district court had subject-matter jurisdiction over her case. No one has suggested that her APA claim seeking to compel a federal agency—the INS, she claimed, even though it would have been more accurate to identify the State Department (of which the U.S. Embassy in Islamabad is a part)—did not fall under the general federal-question jurisdiction conferred in 28 U.S.C. § 1331. It is the mandamus claim that gives rise to more questions.

The district court thought that because Ahmed had not shown that she was entitled to mandamus relief, it did not have subject-matter jurisdiction over her claim. It cited several reasons for this holding: first, it noted that consular visa determinations are discretionary and not subject to judicial review under 8 U.S.C. § 1252(a)(2)-(B)(i) (barring review of adjustment-of-status determinations); second, it thought that mandamus was unavailable because Ahmed had the right to renew a request for adjustment of status upon the commencement of removal proceedings, and third, it noted that her request

for relief was barred because the INS did not have the power to grant relief because of the expiration of that year's program. Each of these reasons has its problems, as we explain briefly below.

As the government concedes, the statute on which the district court relied first, 8 U.S.C. § 1252(a)(2)(B)(i), has no bearing whatever on Ahmed's case, for the simple reason that she was not in the United States at the relevant time and thus could not possibly have received an adjustment of status. The court's second reason was also based on the mistaken assumption that Ahmed was in this country and had remedies available that would prevent her removal. We thus put those two reasons aside for now, and focus on the third point made by the court: whether mandamus was unavailable because no effective relief could be granted. (We return briefly at the end of this opinion to the government's argument that the action of the Embassy in Islamabad was unreviewable on other grounds.)

Our earlier decisions have not been entirely clear on the question whether an inability to grant effective relief goes to the court's subject-matter jurisdiction under the mandamus statute or if it addresses merely whether the party should prevail on her petition. See, *e.g.*, *City of Milwaukee v. Saxbe*, 546 F.2d 693, 700 (7th Cir. 1976) (referring to the "merger" of the questions of jurisdiction and failure to state a claim in the mandamus context), cited in *Cook v. Arentzen*, 582 F.2d 870, 877 (4th Cir. 1978) (explaining that the "jurisdiction spoken of in [*City of Milwaukee v. Saxbe*] refers to the power of any court to grant the relief prayed for," as opposed to "that of a federal court to entertain a question authorized by statute"). Language in our later decision in *Iddir* points both ways.

In our view, it is necessary to distinguish between the court's power to adjudicate the petition and the court's

authority to grant relief. Only the former necessarily implicates the subject-matter jurisdiction of the court; the latter will depend on whether the statute on which the plaintiff is relying imposes a clear duty on the officer or employee of the United States. See *13th Reg'l Corp. v. U.S. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980) ("The requirement that a duty be 'clearly defined' to warrant issuance of a writ does not rule out mandamus actions in situations where the interpretation of the controlling statute is in doubt."). See also *Am. Cetacean Soc'y v. Baldrige*, 768 F.2d 426, 433 (D.C. Cir. 1985), rev'd on other grounds by *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221 (1986). This is not to say that there is no jurisdictional dimension here; it is only to indicate that the usual standards announced in *Bell v. Hood*, 327 U.S. 678 (1946) apply. The Tenth Circuit recognized as much in *Carpet, Linoleum & Resilient Tile Layers, Local Union No. 419 v. Brown*, 656 F.2d 564 (10th Cir. 1981), in which it said:

> In resolving whether section 1361 jurisdiction is present, allegations of the complaint, unless patently frivolous, are taken as true to avoid tackling the merits under the ruse of assessing jurisdiction.

*Id.* at 567 (internal quotations omitted). Unfortunately, just after saying that, the court went on to say "[t]he test for jurisdiction is whether mandamus would be an appropriate means of relief." *Id.* (internal quotations omitted). To complicate matters more, the Fourth Circuit appears to have followed the former statement from *Carpet, Linoleum* in cases such as *First Fed. Sav. & Loan Ass'n v. Baker*, 860 F.2d 135, 140 (4th Cir. 1988), and *Michael v. Lullo*, 173 F.3d 503, 505 n.3 (4th Cir. 1999), without mentioning any inconsistency in the Tenth Circuit's position.

Other courts have given comparably conflicting signals in this complex area. The Sixth Circuit, for example, was

not entirely clear in *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912 (6th Cir. 2002), whether it was following a strict jurisdictional approach or a merits approach. It announced, however, that "[f]or jurisdictional purposes it is not necessary that the duty be clear before the analysis begins; in other words, we take jurisdiction to determine whether there is a duty owed." *Id.* at 915 (internal quotations omitted).

We agree with the *Coal Operators* court that unless the claim is so frivolous that it fails the *Bell v. Hood* test, the district court has jurisdiction under § 1361 to determine whether the prerequisites for mandamus relief have been satisfied: does the plaintiff have a clear right to the relief sought; does the defendant have a duty to perform the act in question; and is there no other adequate remedy available. See *Iddir*, 301 F.3d at 499. A conclusion that any one of those prerequisites is missing should lead the district court to deny the petition, not because it now realizes that it had no power to be thinking about the case in the first place, but because the plaintiff has not demonstrated an entitlement to this form of extraordinary relief.

B

We are satisfied that Ahmed's claim is plausible enough to engage the court's jurisdiction; we therefore turn to the question whether the district court reached the correct result on her request for relief. We conclude that she cannot prevail, because the differences between her situation and the one we faced in *Iddir* do not affect the fundamental basis of our earlier case.

Because *Iddir* is so central here, we begin with a brief description of its holding. In that case, which actually presented the consolidated appeals of a number of immigration lottery "winners," many of the appellants were

frustrated by bureaucratic delays within the INS, just as Ahmed was frustrated by her experience at the Embassy in Islamabad. They filled out all the forms they were given, but sheer inaction on the part of the INS resulted in the agency's failure to make a decision before the visa year expired. Indeed, again as in Ahmed's case, the situation was even worse. The INS specifically told applicants for the visas not to contact the agency, because doing so would only lead to further delays. It rendered this advice while at the same time it was doing nothing at all to process the applications. The applicants sought writs of mandamus in the district court; their petitions were denied. 301 F.3d at 493-95.

This court held that 8 U.S.C. § 1252(a)(2)(B) did not bar appellate review, because that statute applies only if there has been an actual discretionary decision either to grant or to deny the visa. *Id.* at 497-98. The problem in these cases was that no decision of any kind had been rendered. We also held that the applicants had met whatever exhaustion of remedies requirement exists under the statute. Nevertheless, the majority, reaching the merits of the mandamus petition, held (1) that the applicants had a clear right to have their cases adjudicated, (2) that the INS had a duty to adjudicate the applications in a reasonable period of time, but (3) that mandamus had to be denied because the expiration of the time for issuing the visas meant that the agency was powerless to implement any relief. Chief Judge Flaum concurred. He agreed that there was no statutory bar to jurisdiction and that there was no fatal failure to exhaust, because of the futility of any further administrative appeal. He would have found that the cases had become moot after the end of the fiscal year, and would have affirmed the dismissal on that basis. *Id.* at 502. Both the majority and the concurring opinion recognized that the case would have been different if it had been filed be-

fore the end of the visa year, while the INS still had statutory authority to issue the visa, and if the district court had acted within that time period. *Id*. at 501 n.2, 502.

As our account of the facts above makes clear, Ahmed did not file any action in the district court until long after the time for issuing the 1999 diversity visas had expired. Just as in *Iddir*, therefore, the district court had no choice but to deny her petition for a writ of mandamus, because any relief ordered by the court could not be implemented without violating the substantive limitations of the statute creating the diversity visa program. The fact that Ahmed was a person living abroad seeking such a visa, and the parties in *Iddir* appear to have been in the United States on other grounds, is immaterial to this aspect of the case. The key question pertains to the limited extent of the authority to grant these kinds of visas. Here, as in *Iddir*, that statutory authorization had expired, and that precludes mandamus relief. (We recognize that a panel of the Eleventh Circuit has recently come to the same result, but under the mootness theory preferred by Chief Judge Flaum. See *Nyaga v. Ashcroft*, 323 F.3d 906, 916 (11th Cir. 2003). We are not inclined at this point, however, to revisit the theory used in *Iddir* to resolve the matter.)

Ahmed's effort to find a claim under the Administrative Procedure Act is equally unavailing. She relies only on a single district court case, *Hu v. Reno*, No. 3-99-CV-1136-BD, 2000 WL 425174 (N.D. Tex. Apr. 18, 2000), in which the court ruled that APA sections 702 and 706(1), in conjunction with the federal-question statute, 28 U.S.C. § 1331, permit review where the INS refuses to process an adjustment-of-status application in a reasonable time. *Id*. at *3. But *Hu* did not involve a case in which the responsible agency no longer had power to do anything about the application, and thus, even if we were inclined to accept its reasoning, it does not help here.

Because *Iddir* so clearly controls, we have no need to address the government's alternative argument that the doctrine of consular nonreviewability bars Ahmed's suit. We note, however, that it is possible to imagine arguments on both sides of this point. On the one hand, as the government urges, it is generally true that courts do not review judgments regarding alien admissibility made by executive officers outside the United States. See *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159-60 (D.C. Cir. 1999); *Doan v. INS*, 160 F.3d 508, 509 (8th Cir. 1999); *Centeno v. Shultz*, 817 F.2d 1212, 1213-14 (5th Cir. 1987) (*per curiam*); *Ventura-Escamilla v. INS*, 647 F.2d 28, 30 (9th Cir. 1981); *Burrafato v. U.S. Dep't of State*, 523 F.2d 554, 556-57 (2d Cir. 1975). But none of those cases dealt with the diversity visa program, under which the responsibilities of the embassies abroad are equivalent to those of the INS (now, the Department of Homeland Security) inside the United States. We would prefer not to resolve the question whether the doctrine of consular nonreviewability provides an alternate ground for our decision here and instead to await a case in which its existence and scope must be addressed squarely. Nor need we consider whether there is any problem with the fact that Ahmed's suit was brought in the Northern District of Illinois, which seems to be a district that has absolutely nothing to do with Ahmed's situation. It appears from the record, notwithstanding a boilerplate allegation in the complaint, that Ahmed does not live in Illinois (and perhaps has never even been to Illinois), and there is no indication that any U.S. government official in Illinois handled her case. This is only a venue problem that does not affect this court's jurisdiction, which means that we can lay aside any issues relating to her choice of district.

### III

As in *Iddir*, therefore, we find that the district court was empowered to adjudicate the mandamus petition and the APA claims before it, but that it correctly determined on the merits that neither the petition for mandamus nor the claim for relief under the APA could be granted. We thus modify the judgment of the district court to reflect the fact that it is on the merits, not for a lack of subject-matter jurisdiction, and as so modified it is AFFIRMED.

A true Copy:

     Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*