*Decision will be entered under Rule 50.*

DIAMOND GARDNER CORPORATION, TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 80632. Filed September 17, 1962.

*Thomas N. Tarleau, Esq.,* and *Melvin Cornfield, Esq.,* for the petitioner.

*Henry G. Nagel, Esq.,* for the respondent.

OPINION.

MULRONEY, *Judge:* The respondent determined that petitioner is liable as transferee of the assets of General Package Corporation for the income tax due from that corporation for the year 1951 in the amount of $102,489.46, plus interest. The issue is whether petitioner, which acquired the assets and assumed the liabilities of the transferor, is liable as transferee for taxes of the transferor that were barred by the statute of limitations at the time of transfer.

All of the facts were stipulated and they are so found.

Diamond Gardner Corporation, hereinafter called petitioner, was incorporated under the laws of the State of Delaware, and its chief executive offices are in New York, New York.

General Package Corporation was incorporated under the laws of the State of Delaware, with its chief executive office in Chicago, Illinois. On July 16, 1953, Shellmar Products Corporation changed its name to General Package Corporation.

Shellmar Products Corporation filed its tax return for the calender year 1951 on March 17, 1952, with the district director of internal revenue at Columbus, Ohio. The amount of tax shown on the return as filed was understated by the amount of $102,489.46. The full amount thereof, together with statutory interest, remains unpaid. Shellmar Products Corporation (later General Package Corporation) did not at any time file a consent form extending the statute of limitations, nor was any deficiency in tax for the calendar year 1951 assessed against it, nor was it notified prior to the running of the period of limitations for assessment that such deficiency assessment was either proposed or had been determined upon, and the statute of limitations for assessment of the 1951 income or excess profits tax against Shellmar Products Corporation (later General Package Corporation) was not at any time waived or tolled in such or in any other way.

On March 17, 1955, the period of limitation for assessment of taxes against General Package Corporation for the calendar year 1951 expired.

Under a "Plan and Agreement of Reorganization" between the Diamond Match Company and General Package Corporation, the petitioner on May 31, 1955, purchased all the assets and assumed all the liabilities and obligations of General Package Corporation in exchange for 935,042 shares of common stock of the petitioner. The document by which petitioner assumed these liabilities and obligations states, in part, as follows:

ASSUMPTION OF LIABILITIES AND OBLIGATIONS

The Diamond Match Company, pursuant to Section 2(d) of Article III of a Plan and Agreement of Reorganization between The Diamond Match Company and General Package Corporation dated March 7, 1955, hereby assumes all of

the liabilities of General Package Corporation and agrees to indemnify and hold harmless General Package Corporation from any and all liability of every nature and description, and The Diamond Match Company undertakes to perform all obligations to be performed by General Package Corporation from and after the date hereof under any contracts or agreements of any kind, specifically excepting, however, from the terms of this assumption and undertaking any liability of General Package Corporation under stock options granted by it to certain of its officers and employees on September 24, 1953.

The assets received by petitioner in the above transfer with General Package Corporation had a value in excess of the aforesaid tax deficiency of $102,489.46, plus interest.

Pursuant to the reorganization agreement, General Package Corporation liquidated and dissolved and distributed the common stock of petitioner, received on the sale of its assets, to stockholders in cancellation of the outstanding shares of common stock of General Package Corporation on May 31, 1955.

Petitioner executed qualified consent on Form 977 accepted by the assistant regional commissioner, appellate, of the Chicago region on the dates shown below, extending the period during which petitioner's transferee liability might be assessed to the dates shown below:

| Date accepted | Statute of limitations extended to— |
|---|---|
| Feb. 15, 1956 | June 30, 1957 |
| Mar 25, 1957 | June 30, 1958 |
| May 21, 1958 | June 30, 1959 |

Each such consent provided, among other things: "This consent shall have no force or effect if it is determined that the assessment of additional taxes for the period in question is barred by the statute of limitations at the date this consent is signed."

On March 4, 1959, the respondent mailed to the petitioner a deficiency notice to the effect that the income tax return of Shellmar Products Corporation for the calendar year 1951 disclosed a deficiency of $102,489.46, plus interest, due to an adjustment in net income from $6,009,896.75 to $6,153,321.31 (by adding $164,576.64 in unallowable deductions and additional income and subtracting $21,152.08 of additional deductions and nontaxable income), and that such deficiency would be assessed against petitioner as transferee of General Package Corporation.

Respondent's entire argument is outlined in his brief, as follows:

It is respondent's contention that the taxpayer's unpaid taxes became a legal and technical "liability" on the date its return was filed. Although the respondent can no longer assess and collect this amount from the taxpayer without it resulting in a technical overpayment because of the running of the statute of limitations, the underlying "liability" has not been extinguished and remains in existence for any and all other purposes. Thus, when petitioner agreed to assume "all obligations and liabilities" of the taxpayer, this outstanding "lia-

bility" fell directly within the all-inclusive language used in the assumption contract entered into at arms length by the petitioner with the taxpayer.

Therefore, since respondent can proceed as a third party beneficiary under local law, and because all the other elements of transferee liability at law are met in this case, petitioner should be held liable as transferee of the assets of the taxpayer to the extent of $102,489.46, plus interest.

Respondent is seeking to hold petitioner liable as transferee under section 311 of the Internal Revenue Code of 1939 [1] (made applicable here by section 7851(a) of the Internal Revenue Code of 1954).

It has been held that the statutory transferee liability can be founded on a transferee's assumption contract that accompanies the transfer of assets. *Helvering* v. *Wheeling Mold & Foundry Co.*, 71 F. 2d 749; *California Iron Yards Corp.* v. *Commissioner*, 82 F. 2d 776; *Continental Baking Co.* v. *Helvering*, 75 F. 2d 243.[2]

The statute quoted above neither creates nor defines a substantive liability but merely establishes a procedure for the assessment and collection of the "liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax * * * imposed upon the taxpayer." Respondent has the burden of proof to show that petitioner is liable as a transferee of property of a taxpayer but not to show that the taxpayer was liable for the tax. Sec. 1119(a), I.R.C. 1939, sec. 6902(a), I.R.C. 1954.

Petitioner's liability as a transferee depends upon the agreement of May 31, 1955, and the intent of the parties as reflected in that agreement. Here the language used in the agreement is plain and unambiguous. It states that the petitioner "hereby assumes all of the liabilities of General Package Corporation." Unless circumstances show otherwise, the ordinary meaning of words should be given to language in contracts and we think the ordinary meaning of "liability" as here used, embraces only those liabilities which were valid and enforcible at the time of the agreement. There is certainly nothing in the agreement to show that the parties intended that petitioner should assume a tax liability or any other liability which was barred

---

[1] SEC. 311. TRANSFERRED ASSETS.

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds) :

(1) TRANSFEREES.—The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter.

* * * * * * *

(b) PERIOD OF LIMITATION.—The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows :

(1) In the case of the liability of an initial transferee of the property of the taxpayer,—within one year after the expiration of the period of limitation for assessment against the taxpayer ;

[2] *United States* v. *Scott*, 167 F. 2d 301, would indicate respondent could also proceed in an action on the contract for the amount of the tax.

by the statute of limitations. Such a liability would be an extraordinary one, and unless assumed in so many words, it should not be imposed upon the petitioner here as transferee.

As we have seen, respondent is here invoking the third party beneficiary doctrine. But any defenses available to the promisee would also be available to the promisor (petitioner). 2 Williston, Contracts sec. 399 (3d ed.)[3]

Respondent cites several cases for the proposition that an assumption by a transferee of "all existing liabilities" includes taxes of the transferor which were undetermined and unassessed by the respondent, *California Iron Yards Corp.* v. *Commissioner, supra; Continental Baking Co.* v. *Helvering, supra; Kenner Oil & Gas Co.,* 32 B.T.A. 186, and the respondent contends that this proposition holds true even if the respondent does not assess the tax against the taxpayer-transferor prior to the expiration of the period of limitations for assessment. *Park & Tilford,* 43 B.T.A. 348; *Gideon-Anderson Co.,* 20 B.T.A. 106. But these cases are readily distinguishable since, as respondent candidly admits on brief, in all of them the transfer of assets to the transferee took place prior to the expiration of the statute of limitations against the assessment of the tax against the taxpayer, or the assumption agreement specifically included taxes.

There is another ground for holding, as we do, that petitioner is not liable as transferee of the barred tax of the taxpayer-transferor. While the general rule is that the statute of limitations merely bars the remedy but does not extinguish the liability, there is every indication that under the internal revenue statutes the tax liability is extinguished after the expiration of the limitations period.

Section 1106(a) of the Revenue Act of 1926[4] provided that the bar of the statute of limitations not only barred the remedy but served to extinguish the tax liability as well. In *Marion Parsons Spencer,* 11 B.T.A. 437 (1928), it was held that the barred tax liability of decedent taxpayer was extinguished by section 1106(a) of the Revenue Act of 1926 and that the respondent could not collect such tax from the decedent's wife as transferee under section 280 of the 1926 Act (forerunner of section 311 of the Internal Revenue Code of 1939) even though respondent acted within the 1-year period of limitation pro-

---

[3] Sec. 399. Invalidity of Debt Assumed; Interpretation of Agreement.

 \*   \*   \*   \*   .   \*   \*   \*

If the promisor's agreement is to be interpreted as a promise to discharge whatever liability the promisee is under, the promisor must certainly be allowed to show that the promisee was under no enforceable liability. Thus, one who in return for an assignment of property assumed all the grantor's debts would certainly be allowed to dispute the validity or enforceability of any claim. [Citing, among other cases, *Crowe* v. *Malba Land Co.,* 76 Misc. 676, 135 N.Y.S. 454.]

[4] Sec. 1106. (a) The bar of the statute of limitations against the United States in respect of any internal-revenue tax shall not only operate to bar the remedy but shall extinguish the liability; but no credit or refund in respect of such tax shall be allowed unless the taxpayer has overpaid the tax. The bar of the statute of limitations against the taxpayer in respect of any internal-revenue tax shall not only operate to bar the remedy but shall extinguish the liability; but no collection in respect of such tax shall be made unless the taxpayer has underpaid the tax.

vided in section 280. Our opinion in the cited case states that "the period of limitation appearing in section 280, relative to the assessment of the liability of a transferee, is necessarily predicated upon the existence of such liability."

It developed that section 1106 (a) of the 1926 Act contained elements of doubt,[5] which Congress sought to meet with the enactment of sections 607–609 of the 1928 Revenue Act, retroactively repealing section 1106. Section 607 of the 1928 Act provided, as follows:

SEC. 607. EFFECT OF EXPIRATION OF PERIOD OF LIMITATION AGAINST UNITED STATES.

Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid (whether before or after the enactment of this Act) after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim.

---

[5] The report of the Joint Committee on Internal Revenue Taxation (1927) stated, in part, as follows:

"Prior to the enactment of the 1926 Act there was doubt as to the legal effect of the bar of the statute of limitations. Was the taxpayer entitled to recover amounts paid after the statutory period if prior thereto he owed that amount of additional tax? Was it important whether the payment after the period was made freely or under duress? These and related questions were the subject of section 1106(a). Unfortunately the section appears to contain elements of doubt which should be clarified. The principal results of the recommendations submitted is that the bar of the statute, whether against the Government or the taxpayer, shall have the same general effect as though the barred obligation had been satisfied (so far as collecting it after the expiration of the period is concerned), and that payments by either after the period shall be deemed to be overpayments to be recovered in the same general manner as an ordinary overpayment within the period. * * *

   *       *       *       *       *       *       *

"Payments by taxpayer after limitation period.—The purpose of the statute of limitations does not relate to the determination of a case on its merits. The purpose is to put an end to controversy. It is, in other words, a statute of repose. In recent revenue laws various time limits have been placed on the assessment and collection of taxes by the Government. Prior to the enactment of the 1926 act there was some doubt as to the effect of the expiration of these time limits on assessment or collection. Section 1106(a) of the Revenue Act of 1926, which deals with the subject, has not completely resolved these doubts. Further legislation seems necessary. The problem may be illustrated by a concrete case. Assume that a taxpayer has filed his return, paid the proper tax in full, and that after the period for assessing additional taxes had expired the Government wrongfully collects a further sum from him by distraint. The taxpayer should clearly be permitted to recover the excessive amount thus collected.

"The case may be slightly changed to illustrate another aspect of the matter by supposing that the amount collected after the expiration of the period would have been due and owing within the period, and that its collection within the period would have been proper. If the statute of limitations against the Government is to be effective the taxpayer must nevertheless be permitted to recover the amount taken from him after the expiration of the period. Otherwise the Government could legally collect by distraint and retain all barred taxes.

"Consideration has been given to the possibility of drawing a line between voluntary payments and involuntary payments made in either case after the Government was barred from collecting the amount in question. Such a distinction is undesirable. A somewhat similar rule with respect to interest under the 1921 act gave rise to much confusion and difficulty. Consequently, it is recommended that the taxpayer be entitled to recover any payment made by him after the period, whether voluntary or involuntary and whether or not under duress.

   *       *       *       *       *       *       *

"The foregoing rules appear to express the intention of Congress in enacting section 1106(a) of the 1926 act, and hence it seems proper, despite the recognized objections to retroactive legislation, to make these rules apply to all overpayments of the nature above discussed which are made after February 25, 1926, and further to provide that any refund coming within these rules which has been disallowed by the commissioner, the board, or any court solely on account of section 1106(a) of the 1926 act, should be promptly allowed."

In S. Rept. No. 960, 70th Cong., 1st Sess., the Senate Finance Committee stated the following:

SEC. 607. EFFECT OF EXPIRATION OF PERIOD OF LIMITATION AGAINST UNITED STATES.

Section 1106(a) of the 1926 act failed to resolve many doubtful questions as to the legal effect which follows the expiration of the period of limitation prescribed for the assessment or collection of a tax or for the making of a refund or credit or the bringing of a suit for refund. Section 1106(a) of the 1926 act is repealed as of its effective date and is replaced by sections 607, 608, 609, and 610 of this bill.

Section 607 of the bill prescribes the effect to be given to the expiration of a period of limitation against the United States and section 608 relates to the effect of the expiration of a period of limitation against the taxpayer.

Section 607 provides that regardless of the correct tax liability any payment shall be an overpayment if made pursuant to an assessment after the expiration of the period of limitation on assessment (no assessment having been made within such period) or after the expiration of the period of limitation on collection by distraint or court proceedings (no distraint or court proceeding having been begun within such period). It is immaterial whether the payment was voluntary or involuntary, and duress is also of no significance in determining the right to recover an amount paid after the statute has run. An overpayment under section 607 is to be credited or refunded the same as any other overpayment.

Section 607 of the 1928 Act is similar to section 6401(a) of the Internal Revenue Code of 1954 which provides that "The term 'overpayment' includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto." Section 6402(a) of the Internal Revenue Code of 1954 provides that "In the case of any overpayment, the Secretary or his delegate within the applicable period of limitations, may credit the amount of such overpayment * * * against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall refund any balance to such person."

In other words, any payment by a taxpayer of a barred tax liability, whether voluntary or involuntary, automatically becomes an "overpayment" and hence subject to mandatory refund. Whether we style the statute of limitations in the Internal Revenue Code a statute of repose or something else, its effect is, for all practical purposes, to extinguish a barred tax liability.[6] See *Elmer M. Melahn*, 9 T.C. 769.

We hold for the petitioner on this issue.

*Decision will be entered for the petitioner.*

---

[6] It is also clear that a waiver of the statute of limitations signed *after* the expiration of the limitations period is without effect. Section 6501(c)(4) of the Internal Revenue Code of 1954 provides that "Where, *before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title,* * * * both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon." (Emphasis added.)